IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| Crystal Marchant, | ) | Civil Action No. 2:18-cv-2757-RMG |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER AND OPINION** |
| Maxim Healthcare Services, Inc., | ) | |
| Defendant. | ) | |

Before the Court is Defendant Maxim Healthcare Services, Inc.'s Motion to Dismiss and Compel Arbitration. (Dkt. No. 4.) For the reasons set forth below, the motion is granted.

**I.    Background**

Plaintiff Crystal Marchant alleges that she was hired by Defendant Maxim Healthcare Services, Inc. in April 2017. (Dkt. No. 1-1 at ¶ 3.) Of note, at the time Plaintiff was hired, she signed a Mutual Agreement to Arbitrate ("arbitration agreement").[1] In relevant part, the arbitration agreement covered:

> Any disputes, claims, complaints or controversies ("Claim(s)") between me and MAXIM arising out of and/or directly or indirectly related to my application for employment with MAXIM, my employment with MAXIM, the terms and conditions of my employment with MAXIM, and/or the termination of my employment with MAXIM, will be resolved by arbitration and NOT by a court or jury as set forth herein.

\* \* \*

**Claims covered by this Mutual Agreement to Arbitrate**

EMPLOYEE and MAXIM mutually agree to arbitrate before a neutral arbitrator exclusively on an individual basis (and not on a class, collective or representative basis) any and all Claims between EMPLOYEE and MAXIM, that arise out of or

---

[1] The arbitration agreement submitted in conjunction with Defendant's motion includes Plaintiff's printed name and signature and is dated April 5, 2017. (Dkt. No. 4-2 at 13.)

>relate to EMPLOYEE's recruitment, application, employment or separation from employment with MAXIM, including Claims involving any current or former officer, director, shareholder, agent or employee of MAXIM, whether the Claims arise under common law, or in tort, contract, or pursuant to a statute, regulation, or ordinance now in existence or which may in the future be enacted or recognized, including, but not limited to, the following Claims:
>
>\* \* \*
>
>• Claims for wrongful termination of employment, violation of public policy and constructive discharge…and any other tort or tort-like causes of action relating to or arising from the employment relationship or the formation or termination thereof….

(Dkt. No. 4-2 at 7.) The arbitration agreement further stated that any arbitration would be conducted before an arbitrator selected pursuant to the employment arbitration rules of the American Arbitration Association ("AAA") and that discovery would be permitted pursuant to the Federal Rules of Civil Procedure. (Dkt. No. 4-2 at 10, 12.) The parties also agreed that Plaintiff's employment with Defendant affects interstate commerce. (*Id.*)

Sometime between April 2017 and August 2017, Plaintiff allegedly reported to a supervisor that narcotic medications were missing. (*Id.* at ¶ 5.) On August 30, 2017, a patient was allegedly locked out of a building while Plaintiff was cooking lunch. (*Id.* at ¶ 6.) Plaintiff was allegedly told to leave the building, and subsequently interviewed by the South Carolina Law Enforcement Division ("SLED") about the incident. (*Id.* at ¶¶ 7 – 8.) On October 15, 2017, the interview with SLED was submitted to Defendant's corporate offices for a decision, and Plaintiff was terminated on November 13, 2017. (*Id.* at ¶¶ 10 – 12.) Plaintiff alleges that the reasons given for her termination were pretextual and instead she was terminated for reporting the missing narcotic medication. *Id.*

Plaintiff asserts a single cause of action alleging termination in violation of public policy. (Dkt. No. 1-1.) Defendant removed this case on October 10, 2018, and now moves to dismiss and compel arbitration. (Dkt. No. 4.) Plaintiff opposes the motion. (Dkt. No. 5.)

## II. Legal Standard

The Federal Arbitration Act ("FAA") reflects a liberal policy toward arbitration. The Act provides that a written agreement to arbitrate in any contract involving interstate commerce "shall be valid, irrevocable and enforceable" unless there exists grounds for revocation in law or equity. 9 U.S.C. § 2; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A litigant can compel arbitration under the FAA if the litigant can demonstrate: "(1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) *quoting Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). District courts have "no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins*, 303 F.3d at 500.

Where all of the claims asserted in a complaint are subject to arbitration, the Fourth Circuit has held that dismissal is an appropriate remedy. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.").

## III. Discussion

This dispute is subject to arbitration under the FAA under the four part test applied by the Fourth Circuit. First, there is a dispute between the parties, as evidenced by the Complaint filed in this action. (Dkt. No. 1-1.)

Second, the parties entered into a valid written agreement which contains an arbitration provision covering the dispute. Specifically, the arbitration agreement signed by the parties on April 5, 2017, explicitly covers "[c]laims for wrongful termination of employment" and claims for "violation of public policy," the exact claim brought by Plaintiff here.[2] (Dkt. No. 4-2 at 7.) Plaintiff, however, argues that no agreement existed between the parties, and that, regardless the arbitration agreement is unconscionable.

Plaintiff alleges that the arbitration agreement was not entered into "knowingly" and she did not have an opportunity to read the document. However, the arbitration agreement itself stated that Plaintiff acknowledge that she "has carefully read this agreement and understands the terms of this agreement[,]" and that the "agreement is being entered into voluntarily." (Dkt. No. 4-2 at 13.) Plaintiff also acknowledged that she had "been given the opportunity to discuss this agreement with private legal counsel...." (*Id.*) Further, Plaintiff has not presented any non-conclusory allegations or evidence that she did not have the opportunity to read or review the document. Therefore, Plaintiff knowingly accepted the arbitration agreement. *See Ortberg v. Holiday Kamper Co. of Columbia, LLC*, No. CIV.A. 2:10-0962-CWH, 2010 WL 6647761, at *4 (D.S.C. Aug. 27, 2010), *report and recommendation adopted sub nom. Ortberg v. Holiday Kamper Co. of Columbia*, No. 2:10-CV-0962-CWH, 2011 WL 1883853 (D.S.C. May 17, 2011) ("Plaintiff cannot defeat the terms of an otherwise valid contract, which she acknowledges she received and signed, by simply asserting at a later point in time that she did not understand what she was signing."); *Carter v. MasTec Servs. Co.*, No. C.A. 2:09-2721-PMD, 2010 WL 500421, at *3 (D.S.C. Feb. 5, 2010) ("[South Carolina] law does not impose a duty to explain a document's

---

[2] *Joyner v. GE Healthcare*, No. 4:08-2563-TLW-TER, 2009 WL 3063040, at *2 (D.S.C. Sept. 18, 2009) ("the Court may consider materials outside the pleadings to determine whether a valid arbitration agreement exists."). Here, the Court considered the arbitration agreement itself.

contents to an individual when the individual can learn the contents from simply reading the document.") (citations omitted).

Plaintiff also argues the contract is unconscionable. Plaintiff alleges that the arbitration agreement was an adhesion contract, and therefore "subject to greater scrutiny," because Plaintiff had no choice but to accept the arbitration agreement if she wished to be employed. However, this does not render the contract *per se* unconscionable. *See Ortberg*, 2010 WL 6647761, at *5 ("fact that the Arbitration Agreement may have been offered on a "take-it-or-leave-it" basis…does not by itself make the Arbitration Agreement unconscionable"). Plaintiff also argues that there are various procedural deficiencies with the arbitration agreement, such as the agreement prohibiting meaningful discovery and divesting her of any input in picking the arbitrator. (Dkt. No. 5 at 7.) However, a review of the agreement discloses that this is not the case. Instead the arbitration agreement requires discovery under the Federal Rules of Civil Procedure, and the arbitrator is picked via the neutral provisions in the AAA employment arbitrator rules. (Dkt. No. 4-2 at 10.)

Plaintiff further argues that under the South Carolina Uniform Arbitration Act, an employer may not condition employment on an individual's agreement to arbitrate all employment disputes. *See* S.C. Code Ann. § 15-48-10.[3] However, this argument is unavailing. *See Ortberg*, 2010 WL 6647761, at *5 (dismissing case where Plaintiff made same argument). Furthermore, the FAA, rather than South Carolina law, applies to this dispute. *See Towles v. United HealthCare Corp.*, 338 S.C. 29, 36, 524 S.E.2d 839, 843 (Ct. App. 1999) ("Because interstate commerce is involved, the FAA applies and displaces South Carolina's Uniform Arbitration Act."). Therefore, a valid written agreement to arbitrate existed.

---

[3] Plaintiff, in her brief, cites to S.C.Code Ann. § 15–48–80, which deals with witnesses, subpoenas, and documents in arbitration. Plaintiff likely intended to cite S.C.Code Ann. § 15–48–10.

Third, the agreement affects interstate commerce. To begin with, in the arbitration agreement itself, the Parties agreed that Defendant's business, and Plaintiff's employment, both affect interstate commerce. (Dkt. No. 4-2 at 12.) Furthermore, Plaintiff was employed in South Carolina by Defendant, a company based in Maryland, and Defendant provides services to patients in South Carolina. *See McCollum v. Tenet Healthcare Corp.*, No. C A 0:06-1934-JFA-BM, 2006 WL 3373096, at *3 (D.S.C. Nov. 20, 2006) (agreement touched or concerned interstate commerce where plaintiff was employed and paid by out of state company that also provided treatment to patients in South Carolina).

Fourth, and finally, Plaintiff does not dispute that she refused to arbitrate, as evidenced by her Complaint and filings in this case. Therefore, the Court will dismiss this case without prejudice.

## IV. Conclusion

For the foregoing reasons, Defendant Maxim Healthcare Services, Inc.'s Motion to Dismiss and Compel Arbitration (Dkt. No. 4) is **GRANTED**. The Court **ORDERS** Plaintiff Crystal Marchant and Defendant Maxim Healthcare Services, Inc. to arbitrate their dispute in accordance with the Mutual Agreement to Arbitrate. All claims against Defendant Maxim Healthcare Services, Inc. are **DISMISSED WITHOUT PREJUDICE.**

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

November 5, 2018
Charleston, South Carolina